Clemis L. JACKSON, M.D., Appellant,

v.

BIOTECTRONICS, INC. d/b/a Bio–Electric Therapy Associates, Appellee.

No. 14–94–01220–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 5, 1996.

Woodrow W. Miller, Houston, for appellant.

Thomas L. Hunt, Ryan Chadwick, Kathleen Walsh Beirne, Houston, for appellee.

Before LEE, HUDSON and EDELMAN, JJ.

## OPINION ON MOTION FOR REHEARING

LEE, Justice.

Appellant's motion for rehearing is denied, the opinion issued in this case on August 29, 1996 is withdrawn, and the following opinion is issued in its place.

This is an appeal by writ of error of a no answer default judgment entered against Dr. Clemis Jackson. In ten points of error, Jackson appeals the judgment. We affirm.

Appellant, Jackson, is a medical doctor who practices in Fort Bend County, Texas. Appellee, Bio–Electric Therapy Associates (BETA), is a medical service company which provided Jackson with therapists to assist in the treatment of Jackson's patients. In August 1993, BETA entered into an agreement with Jackson to provide therapists. Under the agreement, Jackson was to pay BETA sixty percent (60%) of the amount collected for the services provided by the therapists. In addition, the contract provided that Jackson would not attempt to employ the therapists for the same or similar services at the doctor's facilities.

Pursuant to the agreement, BETA assigned Ryan Fugate to perform services at Jackson's office. Fugate performed therapy for Jackson's office from August through December 1993. BETA alleged that on December 6, 1993, Jackson approached Fugate about terminating his employment with BETA and initiating employment with Jackson. Approximately two weeks later, Fugate quit working for BETA and began working for Jackson directly.

BETA brought this action alleging two causes of action: 1) breach of contract and 2) intentional and tortious interference with a contractual relationship. Jackson did not answer or appear. After a hearing to prove unliquidated damages, the trial court entered a default judgment for approximately $50,000 in damages and attorney's fees against Jackson on August 11, 1994. On November 1, 1994, Jackson filed this petition for writ of error.

A default judgment on an unliquidated claim admits all allegations of facts set out in the petition, except the amount of damages. *Stoner v. Thompson,* 578 S.W.2d 679, 684 (Tex.1979); *Comstock Silversmiths, Inc. v. Carey,* 894 S.W.2d 56, 57 (Tex.App.— San Antonio 1995, no writ). "If the facts set out in the petition allege a cause of action, a default judgment conclusively establishes the defendant's liability." *Morgan v. Compugraphic Corp.,* 675 S.W.2d 729, 731 (Tex. 1984). The supreme court has referred to the forgoing as "two long-standing rules of Texas jurisprudence." *Id.* (citing *Stoner,* 578 S.W.2d at 684; *Tarrant County v. Lively,* 25 Tex. 399 (Supp.1860); *Clark v. Compton,* 15 Tex. 32 (1855); *Long v. Wortham,* 4 Tex. 381 (1849); *Wall v. Wall,* 630 S.W.2d 493, 496 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.)).

Jackson's sixth, eighth and ninth points of error run afoul of these two "long standing" rules. These points of error relate to whether or not Jackson was liable on BETA's breach of contract claim. Jackson contends that the evidence presented to the trial court was insufficient to support:

1. the judgment because BETA failed to demonstrate that it had satisfied all the conditions precedent in the contract (point 6);

2. the trial court's finding "that the contract was terminated by either party" (point 8); and

3. the trial court's finding that he signed the agreement (point 9).

Each of these points of error address whether or not Jackson was liable for breach of contract. We have reviewed BETA's petition and find that it alleges a breach of

contract cause of action. Therefore, because Jackson failed to answer and a default judgment was entered, BETA's petition "conclusively establishes" Jackson's liability for breach of contract. *See Morgan,* 675 S.W.2d at 731; *Stoner,* 578 S.W.2d at 684; *Comstock,* 894 S.W.2d at 57. Jackson's sixth, eighth and ninth points of error are overruled.

■■■ Appellant's first, third, fourth and seventh points of error similarly disregard basic writ of error, default judgment practice. A trial court is to grant a default judgment if the plaintiff files a petition that properly states a cause of action, invokes the trial court's jurisdiction, gives fair notice to the defendant, and does not affirmatively disclose any invalidity of the claim on its face. *Paramount Pipe & Supply Co. v. Muhr,* 749 S.W.2d 491, 494 (Tex.1988). In order to obtain relief from a default judgment with an appeal by writ of error to the court of appeals, the petition for writ of error must show that the petition was perfected within six months of the judgment, by a party to the suit, who did not participate in the trial, and error that is apparent on the face of the record. TEX.R.APP.P. 45; *Havens v. Ayers,* 886 S.W.2d 506, 508 (Tex.App.—Houston [1st Dist.] 1994, no writ). A writ of error is intended to protect a party that did not participate in the trial of the matter and did not discover that a judgment had been rendered against it until after the judgment was signed. *Noriega v. Cueves,* 879 S.W.2d 192, 193 (Tex.App.—Houston [14th Dist.] 1994, writ denied); but *see Texaco, Inc. v. Central Power & Light Co.,* 925 S.W.2d 586, 590 (1996) (noting that writ of error is not an equitable remedy "but another mode of appeal"). In his first, third, fourth and seventh points of error, Jackson attempts to shift the burden onto BETA or the trial court to demonstrate that venue, jurisdiction or the trial court's findings supporting the award of attorney's fees were proper. Instead, the burden is properly on Jackson to demonstrate that an error was made in the trial court and that the error was apparent from the face of the record. *See Primate Constr.,*

*Inc. v. Silver,* 884 S.W.2d 151, 152 (Tex.1994) (per curiam).

■■ In his fifth point of error, Jackson argues there was no evidence, or factually insufficient evidence, to support the award of damages in this case. Specifically, Jackson contends the trial court erred in finding that he collected any charges as a condition precedent to BETA's recovery. As noted, the general rule is that a default judgment on an unliquidated claim admits all allegations of facts set out in the petition, except the amount of damages. *Stoner,* 578 S.W.2d at 684; *Comstock,* 894 S.W.2d at 57. To establish unliquidated damages, a plaintiff must produce evidence sufficient to comport with TEX.R.CIV.P. 243. *Willacy County Appraisal Review Board v. South Padre Land Co.,* 767 S.W.2d 201, 204 (Tex.App.—Corpus Christi 1989, no writ), *citing Harris County Water Control & Improvement Dist. v. Hornberger,* 601 S.W.2d 66, 67–68 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.).

Jackson points out that BETA's petition alleged that "Pursuant to the terms of the contract Jackson became bound and obligated to pay BETA sixty (60%) percent of all collected charges associated with the delegated services provided under the contract." Jackson alleges the only testimony BETA produced at the default judgment hearing regarded the amounts Jackson *billed* rather than collected. Therefore, Jackson contends, there was no evidence or factually insufficient evidence to uphold the award of damages on the contract. We disagree.

At the default judgment proceeding, Ms. Marie Valenzuela, Executive Director of BETA, testified concerning unliquidated damages. She explained the contract called for BETA to receive 60% of the "collection from the insurance company." She also testified the total billing for Mr. Fugate's services was $80,211.00, and the insurance company would reimburse Jackson at a rate of 84%.[1] Sixty percent (60%) of this amount, which BETA was due under the contract, amounted to $40,343.72. Using the same 84% reimbursement (or collection) rate, Ms.

---

1. Ms. Valenzuela testified the 84% reimbursement rate was a conservative estimate given the fact the average reimbursement rate is 92%.

Valenzuela also testified that BETA was entitled to an additional $7,628.35 because of Jackson's failure to terminate the contract in a timely fashion, i.e., future damages. We find this evidence satisfies TEX.R.CIV.P. 243 and is therefore sufficient to support the award of damages on the contract.[2] Jackson's fifth point of error is overruled.

■ In his first point of error, Jackson asserts that the default judgment should not have been entered because Harris County was not the proper venue for the matter. Jackson maintains that because the petition alleged that he was conducting business in Fort Bend County, venue was not properly in Harris County.

■ If a defendant objects to the plaintiff's choice of venue, the question of proper venue is raised and the plaintiff must prove that the matter is maintainable in the county of the suit. *Wilson v. Texas Parks and Wildlife Dep't*, 886 S.W.2d 259, 260 (Tex. 1994). However, if the defendant does not challenge the plaintiff's choice of venue through a motion to transfer venue, venue is fixed in the county chosen by the plaintiff. *Id.* Thus, while venue may be improper, the defendant can submit to the location by failing to raise the matter with the trial court.

BETA contends that venue was appropriate under either section 15.001 or 15.040. TEX.CIV.PRAC. & REM.CODE ANN. 15.001; 15.040 (Vernon 1986), amended by Act of May 18, 1995, 74th Leg., R.S., ch. 138, 1, 1995 Tex.Gen.Laws 978, 978 (current version at TEX.CIV.PRAC. & REM.CODE ANN. 15.001; 15.002 (Vernon Supp.1996)); *see also* CASSIDY & STOREY, Venue Whenue Need It Fast, HBA APPELLATE PRACTICE SECTION (June 26, 1996). Section 15.001 provided that, as a general rule, suits were to be brought in the county were the cause of action accrued or in the county of the defendant's residence. TEX. CIV.PRAC. & REM.CODE ANN. 15.001 (Vernon 1986). Section 15.040 provided that if the residence of the defendant is unknown, the suit may be brought in the county in which the plaintiff resides. *Id.* at 15.040.

There is no venue error on the face of the record before us. Under section 15.001, venue was permissible in Harris County if it was where the cause of action accrued or if it was Jackson's **residence.** The record affirmatively demonstrates that Jackson's primary place of business was Fort Bend County. It does not indicate where he resided or where the cause of action accrued. Because the record does not affirmatively demonstrate that venue was improper in Harris County, the trial court did not reversibly err in granting BETA a default judgment. Jackson's first point of error is overruled.

■ In his third point of error, Jackson contends that the default judgment should not have been granted because the trial court failed to find that it had personal or subject matter jurisdiction. The record facially indicates that this suit was properly brought in Harris County Civil Court at Law. BETA brought a breach of contract and an intentional interference with contract action against Jackson. In the hearing on its motion for default judgment, BETA proved damages and attorney's fees of approximately $50,000. The causes of action alleged and the amount of damages were all within the subject matter jurisdiction of the court. *See* TEX.GOV'T CODE ANN. 24.0003; 25.1032 (Vernon 1988 & Supp.1996).

■ In addition, there is no indication in the record that Jackson was not a resident of Texas. In fact, the record demonstrates the opposite. Jackson's work address was indicated to be Katy, Texas. As such, he was within the in personam jurisdiction of the Texas courts. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1877); *National Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769 (Tex.1995). Because no jurisdictional error was demonstrated on the face of the record, we overrule Jackson's third point of error.

■ In his fourth and seventh points of error, Jackson complains of the award of

---

2. The trial court also awarded BETA $514.62 for the costs of hiring and training an employee to replace Mr. Fugate. Because Jackson does not contest these damages, we need not consider whether the award was appropriate.

attorney's fees to BETA. He argues that the evidence is insufficient under section 38.002 because the contract did not provide for attorney's fees and because the record fails to demonstrate that BETA sent Jackson a 30 day demand letter. *See* TEX.CIV.PRAC. & REM.CODE ANN. 38.002 (Vernon 1986).

■ Attorney's fees are not recoverable in Texas unless allowed by statute or by contract. *Dallas Cent. Appraisal Dist. v. Seven Inv. Co.*, 835 S.W.2d 75, 77 (Tex.1992); *Grand Prairie v. Sisters of Holy Family*, 868 S.W.2d 835, 846 (Tex.App.—Dallas 1993, writ denied); *cert. denied,* —— U.S. ——, 115 S.Ct. 319, 130 L.Ed.2d 280 (1994). Section 38.001(8) specifically provides that a person may recover attorney's fees if he brings a claim for "an oral or written contract." TEX. CIV.PRAC. & REM.CODE ANN. 38.001 (Vernon 1986). BETA brought a breach of contract action, and as such, it was entitled to recover its attorney's fees. *See Atlantic Richfield Co. v. Long Trusts*, 860 S.W.2d 439, 449–50 (Tex.App.—Texarkana 1993, writ denied).

At the hearing on BETA's motion for default judgment, BETA's attorney testified that BETA had incurred reasonable and necessary attorney's fees of $1,823.69. The trial court awarded this amount. In addition, BETA alleged in its petition that it had presented its claim to Jackson and that more than thirty days had passed since the demand was made. Once again, the face of the record does not demonstrate error. Accordingly, we overrule Jackson's fourth and seventh points of error.

■ Finally, in his second and tenth points of error, Jackson complains that the return of service of citation was insufficient because it did not include the date it was filed with the clerk's office and because it did not state that he was served in Texas. Thus, he asserts that it was impossible for the trial court to determine if the return of service was on file with the clerk of the court for ten days. *See* TEX.R.CIV.P. 107.

■ There are no presumptions of proper service when a default judgment is attacked by writ of error. *HB & WM, Inc. v. Smith*, 802 S.W.2d 279, 281 (Tex.App.— San Antonio 1990, no writ). Rather, when a writ of error directly attacks a default judgment, the rules regarding the issuance, service, and return of process are mandatory. Failure to affirmatively show strict compliance with those rules renders the attempted service of process invalid. *Id.; Barnes v. Frost Nat'l Bank*, 840 S.W.2d 747, 749 (Tex. App.—San Antonio 1992, no writ). The return on the citation must state when the citation was served, the manner of service, and the endorsement of the officer or authorized person executing the citation. *Barnes,* 840 S.W.2d at 749; *Massachusetts Newton Buying Corp. v. Huber,* 788 S.W.2d 100, 102 (Tex.App.—Houston [14th Dist.] 1990, no writ).

While these two points of error theoretically could have provided Jackson some relief, a review of the record demonstrates that his argument was completely unfounded. The officer's return states that the citation was given to him on May 2, 1994, at 9:20 a.m. and that he executed the citation:

> in Ft. Bend County, Texas by delivering to each of the within named Defendants, in person, a true copy of this Citation together with the accompanying copy of the Plaintiff's petition, at the following time and places to-wit: Clemis L. Jackson M.D. [May 2, 1994, at] 10:30 a.m. 5618 Medical Center Dr. # 108.

The officer affixed the Fort Bend Constable stamp and his signature to the return. The first page of the citation also includes a stamp by the Fort Bend Constable indicating that it was entered on May 2, 1994. The citation was file stamped by the Harris County Clerk on May 23, 1994. On June 6, 1994, the return of citation was filed with the trial court as an exhibit to BETA's motion for default judgment. An interlocutory default judgment was entered on July 6 and a final default judgment was entered on August 11, 1994. Thus, the return clearly indicates the three required elements: 1) the citation was served on May 2, 1994, at 10:30 a.m.; 2) the citation was served in person; and 3) the officer signed the return. In addition, the citation and return were on file with the clerk of the court for more that ten days before entry of judgment. All of the rules governing return of process were complied

with. Appellant's second and tenth points are overruled.

Before this case was submitted to this court for consideration, BETA filed a motion to dismiss for lack of jurisdiction and a motion for sanctions under rule of appellate procedure 84. Jackson filed a responsive motion and a cross-motion for sanctions. Rather than ruling on the motions prematurely, we took the motions with the case.

■ After BETA received the default judgment, it began to pursue collection. To that end, BETA filed notice of intent to take Jackson's deposition in aid of enforcement of judgment. Jackson sought injunctive relief from the deposition, but the trial court denied the request. After rescheduling the deposition several times, the parties appeared for the deposition on November 9, 1994. However, before the deposition started, the parties agreed on a payment plan. Jackson agreed to pay $20,000 on November 9, $15,000 on December 9 and $18,622.67 on January 9, 1995. The parties executed a written agreement memorializing the terms of the agreement. On December 9, the parties entered into an "Amended Agreement." This agreement contained the same payment schedule as the original agreement, but added a "clarification" that the parties intended Jackson to:

> remain entitled to any available appellate procedures or remedies allowed by statute or any other law, specifically with regards to relief by writ of error.

Jackson paid the November 9, and December 9 installments under the agreement, but did not pay the final $18,622.67 due on January 9, 1995. There is no indication that the agreement was incorporated into the trial court's judgment, or otherwise filed with the trial court. There is also no indication, other than his failure to make the final payment, that Jackson withdrew his consent to the agreement or that BETA filed an enforcement action on the agreement. *Cf. Mantas v. Fifth Court of Appeals,* 925 S.W.2d 656 (1996); *Padilla v. LaFrance,* 907 S.W.2d 454 (Tex.1995).

■ BETA contends that we should dismiss the appeal as moot because Jackson voluntarily paid the judgment. When "a judgment debtor voluntarily pays and satisfies a judgment rendered against him, the cause becomes moot. He thereby waives his right to appeal and the case must be dismissed." *Highland Church of Christ v. Powell,* 640 S.W.2d 235, 236 (Tex.1982) (citation omitted). The mere fact that a judgment is paid "under protest" does not prevent the case from becoming moot. *Id.; Continental Casualty Co. v. Huizar,* 740 S.W.2d 429, 430 (Tex.1987). Payment "under duress" while an appeal is pending does not, however, render the appeal moot. *Continental Casualty,* 740 S.W.2d at 430; *Highland Church,* 640 S.W.2d at 237.

BETA contends that because Jackson agreed to pay the amount of the judgment, the appeal of the cause has become moot and we should dismiss for lack of jurisdiction. BETA also notes that the parties to a suit cannot agree to confer jurisdiction on a court that otherwise lacks jurisdiction. *See Jones v. Griege,* 803 S.W.2d 486, 487 (Tex.App.— Dallas 1991, no writ). However, we had jurisdiction because Jackson perfected his appeal before the parties executed the agreement. The question is whether the payment agreement rendered the appeal moot, thus depriving us of jurisdiction.

According to the "amended" agreement between the parties, it was their intent that Jackson be able to pursue this writ of error. As a result of the agreement, BETA ceased its attempts to collect the judgment and Jackson made payments. Implicit in the agreement was the fact that Jackson would retain the right to continue his appeal. Thus, in exchange for his agreement to make payments, BETA agreed to forego execution of judgment and Jackson retained the right to appeal the judgment. Arguably, BETA induced Jackson's acceptance of the agreement with the understanding that he could continue his appeal. We cannot say that Jackson *voluntarily* paid and satisfied the judgment when he bargained for the ability to continue his appellate remedies. To now deprive him of the benefit of an appeal would render his initial acceptance "involuntary." Thus, we find that we have jurisdiction over this appeal and deny BETA's motion to dismiss.

**46**

Both parties also moved for sanctions or damages for delay under rule 84, which states:

> In civil cases where the court of appeals shall determine that an appellant has taken an appeal for delay and without sufficient cause, then the court may, as part of its judgment, award each prevailing appellee an amount not to exceed ten percent of the amount of damages awarded to such appellee as damages against such appellant.

Tex.R.App.P. 84.

In the proper case, this court does not hesitate to award sanctions under rule 84. *See e.g., Casteel–Diebolt v. Diebolt,* 912 S.W.2d 302, 306 (Tex.App.—Houston [14th Dist.] 1995, no writ); *Eichelberger v. Balette,* 841 S.W.2d 508, 511 (Tex.App.—Houston [14th Dist.] 1992, writ denied), *cert. denied,* 510 U.S. 991, 114 S.Ct. 548, 126 L.Ed.2d 450 (1993); *Francis v. Marshall,* 841 S.W.2d 51, 54–55 (Tex.App.—Houston [14th Dist.] 1992, no writ). Whether to grant sanctions is a matter of discretion, *Maronge v. Cityfed Mortgage Co.,* 803 S.W.2d 393, 396 (Tex.App.—Houston [14th Dist.] 1991, no writ), which we will only apply with prudence, caution, and after careful deliberation. *Exxon Corp. v. Shuttlesworth,* 800 S.W.2d 902, 908 (Tex.App.—Houston [14th Dist.] 1990, no writ). We must look at the case from the point of view of an advocate, and determine whether the appellant had a reasonable expectation of reversal or if the appeal was brought in bad faith. *Id.; Francis,* 841 S.W.2d at 54–55. We are to "impose damages only if the likelihood of a favorable result was so improbable as to make this an appeal taken for delay and without sufficient cause." *Francis,* 841 S.W.2d at 55.

We have reviewed the record, read the briefs of the parties, and heard their oral argument. There is no indication that BETA's motion to dismiss was brought in bad faith. Rather, it appears that it was simply attempting to extend existing law to the facts of its case. Jackson's motion for rule 84 damages is denied.

On the other hand, BETA's motion for rule 84 damages is well founded. Several of Jackson's points of error contain little or no authority, and in most instances, when he did cite authority, it was off point. *See* Tex. R.App.P. 74(f). Eight of his ten points of error clearly had no merit and demonstrated a misplacement of the burden in a writ of error appeal. The remaining two points of error were belied by a cursory review of the record. In the absence of any arguable basis for relief, we can only conclude that Jackson brought this appeal for delay. As our Chief Justice recently wrote, "[b]ecause frivolous litigation should not go unsanctioned," BETA's motion for sanctions is granted. *See Casteel–Diebolt,* 912 S.W.2d at 306. We exercise our discretion and assess rule 84 damages against Jackson of ten percent of the amount of damages awarded by the trial court.

The judgment of the trial court is affirmed and we assess rule 84 damages as indicated.