Affirmed and Opinion filed February 2, 2006









Affirmed and Opinion filed February 2, 2006.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00563-CV

____________

 

4901 MAIN, INC., Appellant

 

V.

 

TAS AUTOMOTIVE,
INC., d/b/a EUROPEAN AUTOWORKS OF HOUSTON, Appellee

 



 

On Appeal from the County
Civil Court at Law No. 3

Harris County, Texas

Trial Court Cause No. 740,240

 



 

O P I N I O N

This is a breach of contract case.  Asserting two issues, appellant, 4901 Main,
Inc. (hereinafter Main) appeals a judgment in favor of appellee, TAS
Automotive, Inc., d/b/a/ European Autoworks of Houston (hereinafter TAS).  TAS asserts one cross-point.  We affirm. 









Factual and
Procedural Background

On May 1, 1998, Main leased commercial
property in Houston to TAS for use as an automobile repair shop.  TAS accepted occupancy of the premises Aas is@ and acknowledged
the premises were suitable for TAS=s intended
purpose.[1]  TAS agreed to maintain and repair the premises,
except for roof and structural repairs.[2]  If Main failed to comply with a lease
provision, the lease agreement entitled TAS to sue Main for damages or
terminate the lease.[3]


On September 13, 1999, TAS notified Main
by certified mail, return receipt requested, about various roof and structural
damage at the leased property needing repair.[4]  On January 11, 2000, TAS sent another letter
to Main expressing the need for roof and structural repairs and Main=s contractual
responsibility to make them.  Main
responded to TAS=s letters on January 26, 2000, stating it
would review the items deemed in need of repair.  In August 2001, TAS filed suit against Main
for failure to comply with the lease agreement. 








Panagiotis Smirnis, TAS=s owner, testified
he first complained of a leaky roof around November 1998, a few months after
moving into the property.  Leo Kozadinos,
Main=s president,
testified a roofer inspected the building=s roof shortly
after Smirnis= complaint.  Kozadinos testified the roofer repaired leaks
in the glass door panes and not the roof. 
Kozadinos also testified his roofer inspected the property on at least
two more occasions, but he could produce no documentation of the roofer=s additional
inspections because the roofer did not bill Main.  Smirnis testified the roof was not inspected until
after TAS filed suit.  Smirnis also
contests the assertion no leaks exist. 
In support of Smirnis= testimony, the
court admitted into evidence more than 100 pictures showing apparent roof
leakage, structural damage, and equipment damaged by water.   

At the jury charge conference, TAS and
Main objected to the trial court=s proposed charge
and both made requests, which were refused. 
The jury found: (1) Main inexcusably failed to comply with the lease
agreement; and (2) Main did not breach an implied warranty of suitability that
was a producing cause of damages to TAS. 
The jury awarded TAS $10,000 in damages and $27,000 in attorney=s fees.  On appeal, Main asserts two issues and TAS
brings one cross-point, all alleging charge error.  Main contends (1) the trial court erred by
not submitting an instruction and a definition of waiver with jury questions
one and three and (2) the trial court erred by using the word Aand@ instead of Aor@ in jury question
six.  In one cross-point, TAS contends
the trial court erred by refusing to submit its requested question about
abatement of rent.

Discussion

I.                   
Charge Error: Standard of Review








Texas Rule of Civil
Procedure 278 requires a trial court to submit questions, instructions and
definitions raised by the written pleadings and the evidence.  Tex.
R. Civ. P. 278; see Union Pac. R.R. Co. v. Williams, 85 S.W.3d
162, 166 (Tex. 2002).  Rule 278 is a
directive to trial courts requiring them to submit requested questions to the
jury if pleadings and any evidence support those questions.  Elbaor v. Smith, 845 S.W.2d 240, 243
(Tex. 1992); Roberts v. S. Pacific Transp. Co., 44 S.W.3d 183, 187 (Tex.
App.CHouston
[14th Dist.] 2001, pet. denied).  A trial
court may refuse to submit a question to the jury if: (1) there is no evidence;
(2) there are no pleadings; or (3) the issue is uncontroverted.  Island Recreational Development Corp. v.
Republic of Tex. Savings Assoc., 710 S.W.2d 551, 555 (Tex. 1986).  If there is some evidence to support the
submission, the trial court commits reversible error if it fails to submit the
instruction.  Smith-Hamm, Inc. v.
Equip. Connection, 946 S.W.2d 458, 462 (Tex. App.CHouston
[14th Dist.] 1997, no writ).  We
review a trial court=s
decision to submit or refuse a particular instruction under an abuse of
discretion standard of review.  In re
V.L.K., 24 S.W.3d 338, 341 (Tex. 2000). 
The trial court has considerable discretion to determine necessary and
proper jury instructions.  Id.  A trial court abuses its discretion by acting
arbitrarily, unreasonably, or without consideration of guiding principles.  Walker v. Gutierrez, 111 S.W.3d 56, 62
(Tex. 2003).  

If a trial court abuses its
discretion when it submits an instruction to the jury, we do not reverse in the
absence of  harm.  See Lone Star Gas Co. v. Lemond, 897
S.W.2d 755, 756 (Tex. 1995).  Harm occurs
when the error in the charge probably caused the rendition of an improper
judgment, or prevented appellant from properly presenting the case to the court
of  appeals.  Tex.
R. App. P. 44.1(a); Wal-Mart Stores, Inc. v. Johnson, 106 S.W.3d
718, 723 (Tex. 2003).  To determine harm,
the appellate court must consider the entire record, including the parties= pleadings, the evidence, and the
charge.  See Timberwalk Apartments,
Partners, Inc. v. Cain, 972 S.W.2d 749, 756 (Tex. 1998).  Jury charge error is reversible only if, when
viewed in light of the totality of the circumstances, it amounted to such a
denial of the rights of the complaining party as was reasonably calculated and
probably did cause the rendition of an improper judgment.  Howell Crude Oil Co. v. Donna Refinery
Partners, Ltd., 928 S.W.2d 100, 110 (Tex. App.CHouston
[14th Dist.] 1996, writ denied).

II.                
Instruction and Definition of Waiver








In its first issue, Main
contends the trial court erred because it refused to include an instruction on
and a definition of waiver with jury questions one and three.  Jury question one asked: ADid 4901 Main[,] Inc. fail to comply
with the lease agreement?@  If the jury answered question one
affirmatively, the charge instructed the jury to answer the following question:
AWas 4901 Main, Inc.=s failure to comply with the agreement
in Question 1 excused?@  Main objected to the court=s instruction and requested the
following question, instruction, and definition of waiver:

$                  
Did 4901 Main, Inc. fail to comply with the
lease agreement with TAS because of its failure to repair defects to the roof,
if any?

$                  
Failure to comply by 4901 Main, Inc. is excused
if compliance is waived by TAS.  

$                  
Waiver is an intentional surrender of a known
right or intentional conduct inconsistent with claiming the right. 

The trial court refused Main=s request. The jury found Main failed
to comply with the lease agreement, and Main=s
failure to comply was not excused.

Jury question three asked:

$                  
Was the failure, if any, [of] 4901 Main, Inc. to
comply with an implied warranty of suitability a producing cause of damages to
TAS Automotive, Inc.?

$                  
AFailure
to comply with an implied warranty of suitability@
means: Furnishing a premises that was not suitable for a commercial purpose if
4901 Main, Inc. had reason to know of latent defects in the facilities that are
vital to the use of the premises for their intended commercial purpose.  You are further instructed that when parties
to a lease expressly agree that the tenant will repair certain defects, then
provisions of the lease will control.  

$                  
AProducing
cause@ means an
efficient, exciting or contributing cause that, in a natural sequence, produced
the damages, if any.  There may be more
than one producing cause. 

Main objected to the court=s instruction and requested an
instruction on and definition of waiver. 
The trial court refused Main=s
request.  The jury answered Ano@
to question three.








Main argues sections A(2),
E(44), and E(46) of the lease agreement Aobliterate@ both of TAS=s
cause of action.  The sections upon which
Main relies are an Aas is@ clause, a merger clause, and a
limitation of warranties clause.  Main
contends, by signing the lease agreement containing these three clauses, TAS
waived its claims for damages to the roof. 
However, Main=s
argument omits a discussion of section A(9), which explicitly requires Main to
make repairs to the roof.  

Waiver is the intentional
relinquishment of a known right or intentional conduct inconsistent with
claiming that right.  Jernigan v.
Langley, 111 S.W.3d 153, 156 (Tex. 2003); Smith-Hamm, 946 S.W.2d at
463.  Waiver is an independent ground of
recovery, and to establish such a ground, a party must specifically plead and
prove an independent reason that a plaintiff cannot recover.  See Tex.
R. Civ. P. 94.  A trial court
would deny a party a viable affirmative defense if it refused to submit a
question to the jury if the record revealed that the party properly pleaded and
provided evidence of the affirmative defense at trial.  Exxon Corp. v. Perez, 842 S.W.2d 629,
631 (Tex. 1992).  However, if no evidence
exists to warrant the submission, the trial court=s
refusal to submit a question is correct. 
See TA Operating Corp. v. Solar Applications Eng=rng., Inc., --- S.W.3d ----, No.
04-04-00180-CV, 2005 WL 2401879, at *5 (Tex. App.CSan
Antonio 2005, no pet.).  

Main=s
answer to this suit pleaded waiver and seven other affirmative defenses without
including any facts as to why the defenses were applicable.  On direct examination,  Main=s
trial counsel asked two waiver questions of Kozadinos, Main=s president:

Q.        Did you recall
a paragraph in this lease -- there=s
a lot of information in this lease, I guess we did agree.  But I have an understanding that there is
both a waiver clause and an as-is clause in this lease?

A.        Correct. 

Q.        What is your
understanding of the as-is clause in that lease?

A.        Well, it just
basically means that you accept the property in its current condition as it
is.  Just like buying a used car
as-is.  

Q.        And
furthermore with respect to the waiver paragraph, what rights in your opinion
does that give the tenant, Mr. Smirnis, with respect to the property?








A.        Waiver
basically says that if I or the landlord fails in their responsibility in any
way that the tenant is entitled to walk away from the lease. 

(emphasis added).  This testimony does not explain how TAS may
have waived its rights to require Main to repair the roof, nor does it explain
what section of the lease Kozadinos described.[5]  This testimony seems to describe only one of
TAS=s remedies if Main breaches the
agreement B the
right to unilaterally terminate the contact, which is not the same as a waiver
of rights.[6]  Section A(9) of the lease agreement requires
Main to repair the roof and structure of the building.  Main presented no evidence TAS waived
enforcement of Main=s duty to
make roof and structural repairs to the leased premises.  Indeed, Kozadinos admitted during his testimony
that Main has a duty to repair a leaking roof. 


A plea of waiver unsupported
by any evidence is insufficient to support a jury question on that issue.  See Fadia v. Unauthorized Practice of Law
Committee, 830 S.W.2d 162, (Tex. App.CDallas
1992, writ denied).  No evidence exists
showing how TAS either intentionally relinquished a known right or engaged in
conduct inconsistent with claiming that right. 
Main has failed to bring forward facts showing how TAS waived its right
to sue Main for roof and structural repairs. 
Because the trial court may refuse to submit a jury question if there is
no evidence supporting that question, we hold the trial court did not abuse its
discretion by refusing to include an instruction on and definition of waiver in
jury question one.








Additionally, the jury
answered question three about the implied warranty of suitability in favor of
Main.  Even if the trial court abused its
discretion by not submitting the jury charge as requested on question three,
Main was not harmed because the jury did not find Main liable on the issue of
an implied warranty of suitability.  See
Tex. R. App. P. 44.1(a); Boatland
of Houston, Inc. v. Bailey, 609 S.W.2d 743, 749B50
(Tex. 1980) (holding charge error reversible only when harm is suffered by the
complaining party).  

We overrule Main=s first issue. 

III.              
Attorney=s
Fees

In its second issue, Main
contends the trial court erred in submitting jury question six regarding Main=s claim for attorney=s fees. 
Specifically, Main argues the trial court erred because the jury was
instructed to answer question six only if they determined Main did not breach
the lease agreement (question one) and did not breach an implied
warranty of suitability (question three). 
Main claims it was entitled to collect attorney=s
fees if it successfully defended either of the two claims, instead of having to
successfully defend both claims.[7]  

An award of attorney=s fees must be based on statutory or
contractual authority.  Jackson v.
Biotechtronics, Inc., 937 S.W.2d 38, 44 (Tex. App.CHouston
[14th Dist.] 1996, no writ); see, e.g., Tex. Civ. Prac. & Rem. Code Ann. '
38.001(8) (Vernon 1997) (providing a prevailing party to a cause of action may
recover attorney=s fees in
a suit on an oral or written contract). 
In claiming its entitlement to attorney=s
fees, Main relies on section E(42) of the lease agreement, which provides as
follows: AAttorney
Fees.  The parties acknowledge and agree
that the prevailing party in any lawsuit regarding this lease shall be entitled
to recovery of reasonable attorney=s
fees for the costs of prosecuting or defending such lawsuit.@ 
Main contends it is a Aprevailing
party@ entitled
to attorney=s fees
since the jury answered question three in its favor. 








This court has defined a Aprevailing party@
as the party who successfully prosecutes or defends against an action,
prevailing on the main issue.  Fed.
Deposit Ins. Corp. v. Graham, 882 S.W.2d 890, 900 (Tex. App.CHouston [14th Dist.] 1994, no writ)
(citing Black=s Law Dictionary 1352 (4th ed. rev.
1968)); cf. Flagship Hotel, Ltd. v. City of Galveston, 117 S.W.3d
552, 564 (Tex. App.CTexarkana
2003, pet. denied) (defining Aprevailing
party@ as Aa party in whose favor a judgment is
rendered, regardless of the amount of damages awarded@
based on the 1999 edition of Black=s
Law Dictionary) (alteration in original). 
In other words, the prevailing party is the one vindicated by the trial
court=s
judgment.  City of Amarillo v. Glick,
991 S.W.2d 14, 17 (Tex. App.CAmarillo
1997, pet denied); Dear v. City of Irving, 902 S.W.2d 731, 739 (Tex.
App.CAustin
1995, writ denied).  A determination of
whether a party is the prevailing or successful party must be based upon
success on the merits.  Johns v.
Ram-Forwarding, Inc., 29 S.W.3d 635, 638 (Tex. App.CHouston
[1st Dist.] 2000, no pet); Perez v. Baker Packers, 694 S.W.2d 138, 143
(Tex. App.CHouston
[14th Dist.] 1985, writ ref=d
n.r.e.).  Parties to a lease agreement
may adopt a more liberal standard for recovery of attorney=s fees in their contract, and the
courts will be bound by their choice.  See
One
Call Sys., Inc. v. Houston Lighting & Power Co., 936 S.W.2d 673,
676 (Tex. App.CHouston [14th Dist.] 1996, writ denied)
(interpreting the language in the parties= contract as more
liberally allowing for attorneys fees than Texas Civil Practices and Remedies
Code section 38.001).  Therefore, the
parties here could have, but failed to, provide a definition of Aprevailing party@ in the lease. 

Main, however, does not cite or argue any
legal authority supporting its assertion that it is a Aprevailing party@ under the terms
of this lease agreement.  Additionally,
Main does not explain how the term Aprevailing party@ in the lease
agreement adopts a more liberal standard for recovery of attorney=s fees than the
customary definitions.  We hold Main has
not adequately briefed this issue for appellate review and has waived this
claim on appeal.  See Tex. R. App. P. 38.1(h); Trenholm v.
Ratcliff, 646 S.W.2d 927, 934 (Tex. 1983); Miksch v. Exxon Corp.,
979 S.W.2d 700, 706 (Tex. App.CHouston [14th
Dist.] 1998, pet. denied). 








Moreover, the trial court did not err in
its submission of question six regarding Main=s entitlement to
collect attorney=s fees. 
The core of the controversy in this case was TAS=s claim for
damages resulting from Main=s default, either
by breaching the lease agreement or an implied warranty of suitability.  The jury found Main failed to comply with the
lease agreement and awarded TAS damages. 
Because the primary issue in this case was damages from Main=s default, Main=s successful
defense of an alternative legal theory of liability based on the same facts as
those used to find it liable did not establish Main as a prevailing party under
the lease.  See Wilbur & Village
Lane Ltd. v. Cinemark Corp., No. 14-00-00760-CV, 2002 WL 1041083, at *8
(Tex. App.CHouston [14th Dist.] May 23, 2002, no
pet.) (not designated for publication) (holding the prevailing party at
trial was the party for whom the jury rendered its verdict).  The trial court did not abuse its discretion
by requiring Main to successfully defend both of the two alternative theories
of liability.  

Accordingly, we overrule Main=s second issue.

IV.             
Abatement of Rent

In one cross-point, TAS
argues the trial court erred when it refused to submit the following jury
question:  AShould
the rent payable to 4901 Main, Inc. by TAS Automotive Inc., dba European
Autoworks of Houston be abated until 4901 Main, Inc. has repaired the roof and
structures?@  The trial court refused the request and did
not submit a jury question concerning abatement of rent.[8]  TAS relies on section 91.004 of the Texas
Property Code for the proposition that Main=s
failure to comply with the lease agreement allows TAS to have a lien on the
rent due to Main under the lease.  See
Tex. Prop. Code Ann. ' 91.004 (Vernon 1995). 








Here, neither TAS=s original petition, nor its trial
amendment contain a reference to or discussion about a claim for abatement of
rent by TAS based on Main=s
breach of contract.  We have also
carefully examined the reporter=s
record and find no evidence introduced during trial on the issue of abatement
of rent.  In TAS=s
brief to this court, the cross-point references page 52 of the clerk=s record.  That page contains only the proposed charge
submitted by TAS during trial as set forth above, and the trial court=s refusal notation.  The only other citation to the record in this
cross-point is to pages 56 through 65 of the clerk=s
record, which contain the entire charge of the court and the jury=s answers to the questions
thereon.  TAS does not have pleadings or
evidence to support the submission of a jury question regarding abatement of
rent.  Therefore, we hold the trial court
did not abuse its discretion in refusing to submit TAS=s
proposed jury question.  See Tex. R. Civ. P. 278; Elbaor, 845
S.W.2d at 243 (holding trial court may refuse submission of an issue when no
evidence exists warranting its submission).  We overrule TAS=s
cross-point.

Conclusion

Having considered and overruled Main=s
two issues, as well as TAS=s
cross-point, we affirm the judgment of the trial court. 

 

 

 

 

 

/s/         John S. Anderson

Justice

 

 

 

 

Judgment rendered and Opinion filed February 2,
2006.

Panel consists of Justices Yates, Anderson, and
Hudson











[1]  Under the
heading ALEASE CLAUSES AND COVENANTS,@ section A(2) of the lease provides, as follows: ATenant makes the following agreements and promises to: Accept occupancy of the premises >as is= and acknowledge suitability of the premises for the
uses intended by Tenant.@ (emphasis in original).





[2]  Section A(9)
of the lease provides, as follows: ATenant
makes the following agreements and promises to: Make repairs, replacement of elements, and perform maintenance of all
elements of Tenant=s premises except the following:
roof repairs, structural repairs.@ (emphasis in original).





[3]  Sections E(34)
and E(35) of the lease provide, as follows:

Events of Landlord Default.  Landlord may default in this Lease by failure
to comply with lease provisions within 30 days after notice by Tenant, or by
the failure to provide an essential service to Tenant as defined by this
lease.  Tenant may terminate the lease
upon 30 days continued failure by Landlord to comply or to provide services
after Landlord has been noticed by the Tenant of such event of default.  

Tenant Remedies Upon Landlord Default. 
Tenant=s remedies upon default by Landlord, as specified
above, include suit for damages or termination of the lease 30 days following
Tenant=s notice of Landlord=s
failure to perform its obligations.





[4]  Section E(47)
defines Notices, as follows: ANotices. 
Notices required by this lease shall be deemed effective upon deposit
with the regular United States Mail addressed to the address shown herein, such
deposit to be made with postage affixed for certified mail, return receipt
requested.@





[5]  The only
clause in the lease agreement pertaining to waiver is entitled, AWaiver of Remedies and Mitigation of Damages,@ where the parties agreed their rights to enforce
remedies would not be waived even when one party fails to enforce or
otherwise delays enforcement of a remedy. 
In addition to the lease agreement signed by the parties, they also
signed a sales agreement for the purchase of equipment.  That sales agreement also contains a similar
non-waiver clause.  





[6]  TAS=s other remedy in the event of landlord default is the
initiation of litigation, the remedy chosen by TAS.  





[7]  The section of
the jury charge Main complains of provides the following: AIf your answers to Questions 1 and 3 are >No=, [sic] than [sic] answer Question 6.  Otherwise, do not answer Question 6.@  (emphasis
added).  Main argues the trial court
should have included the word Aor@ instead of Aand.@  





[8]  Section E(28)
of the lease agreement prohibits abatement of rent for any reason.